ADAM W. WALTER, APPELLEE, v. UNION REAL ESTATE
COMPANY, APPELLANT.

FILED NOVEMBER 17, 1921. No. 21706.

1. **Taxation:** ACTION TO REDEEM: TRIAL TO COURT. An action to redeem from a void tax foreclosure sale is properly triable to the

court without the intervention of a jury.

2. ———: FORECLOSURE: JURISDICTION. In an action to foreclose tax sale certificates, where an affidavit is filed alleging that the defendant named is a nonresident of the state, when in fact he died a resident of the state previous to that time, and the only service obtained was constructive service under such an affidavit, the court acquired no jurisdiction, and a decree and sale under such circumstances is void.

3. ———: ———: ———: LIS PENDENS. In an action of foreclosure, where the plaintiff has failed to secure proper service, a notice of lis pendens filed at the time of the commencement of the action is not a substitute for legal service and confers no jurisdiction upon the court for any purpose.

4. Limitation of Actions: FORECLOSURE OF TAX LIENS: INSANE DEFENDANT. Where the owner of real property is confined in an asylum for the insane at the time of an attempted foreclosure of tax liens against his property, and continues to be mentally incompetent after his discharge from the hospital for the insane, the statute of limitations does not commence to run against his right to redeem until he has been sufficiently restored to his mental powers to be able to comprehend that he was the owner of the property, and able to take some action to protect his rights with reference thereto.

APPEAL from the district court for Banner county: RALPH W. HOBART, JUDGE. *Affirmed.*

*R. J. Greene,* for appellant.

*Doyle & Halligan, contra.*

Heard before LETTON, DEAN and DAY, JJ., CORCORAN and Goss, District Judges.

CORCORAN, District Judge.

This is an action brought by the plaintiff to redeem certain lands in Banner county from tax sale, and praying that his title to the land be quieted in him. From a decree granting the prayer of plaintiff's petition, fixing the amount to be paid by him to cover delinquent taxes, interest and costs, after off-setting certain rents, and quieting the title in plaintiff, the defendant brings the case to this court upon appeal.

On September 15, 1891, Leonidas E. Walter acquired title to the land in question by patent from the government. On November 30, the same year, he sold and deeded the land to Adam W. Walter, his brother, who is the plaintiff in the present action. This deed was not recorded until October 24, 1919, a short time before the commencement of the present action. Leonidas E. Walter died, a resident of Buffalo county, on November 15, 1899, and on the 28th of the same month plaintiff was, by the authorities of Buffalo county, committed to the state hospital for the insane at Lincoln, and in 1903 was transferred to the state hospital at Hastings, from which institution he was paroled May 23, 1905, and discharged upon the records November 13, 1906. The plaintiff appears to have wandered about from place to place and from state to state for a number of years, finally coming to Lincoln in the year 1919, where he found a niece, Mrs. Thurman, who appears as his next friend in the present litigation. It was at about this period that he appears to have first recollected that he had any land. The action to foreclose the tax certificates upon the land was brought in the district court for Banner county on February 13, 1902, by one Carlisle, who had acquired the certificates. This action was brought against Leonidas E. Walter as the owner of the land, and an affidavit for constructive service was filed alleging that Leonidas E. Walter was a nonresident of the state of Nebraska. Publication upon this affidavit was the only service had or attempted. Default being made, a decree was entered foreclosing the tax lien and ordering a sale of the premises, which was had during the year 1902, and the paper title acquired by Carlisle. The land, which was rolling, wild prairie, seems to have become trading stock for the next 14 years, and passed through the hands of several owners by mesne conveyances until it reached the defendant company on May 25, 1916. The defendant company then commenced another action to quiet the title to this and other lands on February 13, 1917, in the district court for Banner

county. This action was brought under the present statutes, and was directed against the lands, and all parties claiming any interest in them. Service was had by publication, and, after a default had been made and entered, a decree was taken quieting the title in the defendant company, plaintiff in that suit. The plaintiff commenced this action on December 31, 1919, by filing his petition tc redeem the land from the tax foreclosure sale.

The defendant company urges many errors of the trial court in reaching the decree entered in the case. Among these are that the defendant was entitled to a trial by jury; that the bar of the statute of limitations precluded a recovery by the plaintiff; that the notices of *lis pendens* filed in the foreclosure case of 1902 and in the *quia timet* action of 1917 barred the present plaintiff of all right in the land. The plaintiff, on the other hand, contends that the foreclosure suit was absolutely void; that the statute of limitations cannot be invoked against the plaintiff, whom it is insisted was *non compos mentis* from the time of his commitment to the asylum in 1899 to a time shortly before the commencement of the present action.

Counsel has failed to convince this court that he is in any wise serious in urging the contention that the defendant company was wrongfully deprived of a trial by jury. It is true that the answer sets forth in rather vigorous language the demand that the case should be tried by a jury. The demand appears, however, to have been totally abandoned with the filing of the answer. The record discloses that the case was tried in a very informal manner. All the evidence appearing in the record was taken on two different dates in the city of Lincoln, where counsel met in the office of one of them, and by stipulation took the depositions for both sides. Upon the taking of this evidence the different exhibits used in the case were identified and attached to the depositions. A very meager, and, in some instances, practically no foundation was laid for their admission in evidence. The whole rec-

ord was made up there; the depositions of the witnesses and the original exhibits were all bundled up and sent out to Banner county for the trial court to pass upon. This was authorized by the following paragraph found in the stipulation dictated by counsel for the defendant company himself:

"Mr. Greene: It is further stipulated that this testimony shall be sent to the judge of the court, Honorable R. W. Hobart, and that this cause shall be submitted on this testimony and the pleadings, and that he shall decide the case on the same."

Under this stipulation it would be rather difficult to understand that the defendant company was demanding a jury trial. The record does not disclose that counsel was even present in court when the cause was submitted. A jury could not well be impaneled without his presence or the presence of some one representing the defendant to attend to the matter of securing a proper jury. We consider the matter too trivial to warrant further discussion. In any event, the case was properly triable to the court without the intervention of a jury. It is the usual proceeding under the statute to redeem from a tax sale foreclosure, and as such the court may hear and determine the action without a jury.

That the decree in the tax foreclosure case was absolutely void, there can be little question. Counsel for the defendant company did not in the argument at the bar, nor in his able brief, attempt to sustain it. The only attempt to secure service was against Leonidas E. Walter, who had died, a resident of the state, some three years previous to the commencement of the action. The only living party before the court was the plaintiff. The action was not one against the land, but one against the record owner. As such, it was a personal action, and, there being no service, the court had no jurisdiction, and the decree and sale under it were each void and conferred no right upon any one.

Counsel appears to attach considerable importance to

the filing of the notice of *lis pendens* in the original action. The filing of this statutory notice could not have the effect of bringing parties not even sued into the litigation. The office of the notice is to warn all persons dealing with the title, in the interim between the commencement of the action and the securing of proper service, that litigation is pending affecting the title to the property in question. It does not and cannot take the place of legal service. If it could, counsel and litigants would not be displaying very commendable financial wisdom by incurring large bills of expense to secure service and thus bring defendants into court, if paying the nominal fee for filing the notice of *lis pendens* would answer the same purpose. The most that the notice of *lis pendens* could do in the present instance was to call attention to the fact that an action was pending in which no service upon any defendant had been secured.

This brings us to the discussion of the most important feature presented by the record, the plea of the statute of limitations. This plea must depend upon the evidence adduced at the trial. The evidence of the plaintiff shows that he was committed to the state hospital for the insane at Lincoln in November, 1899, in the same month that his brother Leonidas had died, and was an inmate of the hospital at the time the decree was entered in the tax foreclosure suit. This is also shown by the commitment by the proper officers of Buffalo county and the records of the hospitals for the insane at both Lincoln and Hastings. His testimony further shows that after leaving the hospital at Hastings he went first to a relative at Gibbon, Nebraska, and from there was taken by another brother to his home at Kearney. He appears to have rambled from place to place, and was a part of the time in Kansas, Arkansas, and Illinois. This was during the period from 1906 to about 1918. The evidence upon this point is not very satisfactory, but such as it is it is not disputed. Sometime in 1918 he claims he had a recollection that he had some land, that he had traded his brother a team of

horses for it, and that this occurred before he was sent to the asylum. The unrecorded deed to the land involved in this suit was found in his trunk, where it had probably reposed for nearly 20 years. If this testimony is true, and no attempt has been made to dispute it, then it must follow that the statute of limitations could not run against this man while he was incompetent and unable to comprehend that he had any land.

Upon the other hand, the evidence on behalf of the defendant company falls far short of establishing adverse possession in the defendant and its grantors for the statutory period. The only evidence upon the subject is that of Mr. Marshall, managing officer of the defendant company, who testified that his company acquired title and entered into possession on May 25, 1916. He understood that a tenant of a former owner had been in possession for some years previous to that time, but had no personal knowledge of that fact. Putting it in his own language his knowledge upon that subject was "purely hearsay." In this state of the record it is reasonably clear that the defendant has failed to establish a title by adverse possession.

The action brought by the defendant company against the land on February 13, 1917, after it had acquired the title, and in which it obtained a decree quieting its title, could not have the effect of depriving the present plaintiff of his right in the property. The rights of third parties not having intervened and the present action having been commenced to redeem within five years from the entry of the decree in 1917, under the terms of section 7646, Rev. St. 1913, the present plaintiff is clearly asserting his right in time, and it can make no substantial difference whether he asked to open the decree of 1917 and be let in to defend in that action, or whether he chose to follow the course adopted and prosecute the present action to redeem.

Finally, counsel complains of the form of the decree, in which the trial court recites that the cause came on

for hearing "on the petition of the plaintiff and the answer of the defendant," and omits to state, "and the evidence." This objection is highly technical and without merit. The findings of the court show that the court set forth in the decree many facts not shown by the pleadings, but which appear only in the evidence, establishing conclusively that the court considered the evidence. The omission of the words complained of is clearly an oversight, and the defendant is not prejudiced thereby.

The trial court found that the defendant and its predecessors in title had paid the sum of $536.75 in taxes, interest and costs, and that the rental value of the premises since the defendant went into possession in 1916 was the sum of $200, which the court ordered deducted, and required plaintiff to pay the balance into court for the use of the defendant, as the terms upon which he could redeem from the tax sale, and upon these terms quieted the title to the property in the plaintiff. The findings and decree are amply sustained by the evidence, are clearly right, and are in all things

AFFIRMED.